UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ANTONIO FRENCH,

                Petitioner,

v.                                     Case Number 06-14274
                                     Honorable Thomas L. Ludington

BLAINE LAFLER,

                Respondent.

_____/

### OPINION AND ORDER GRANTING PETITIONER'S MOTION TO PROCEED IN FORMA PAUPERIS, DENYING THE HABEAS CORPUS PETITION, AND GRANTING A CERTIFICATE OF APPEALABILITY

Petitioner Antonio French, presently confined at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a pro se application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in Wayne County Circuit Court of first-degree murder and assault with intent to commit murder. The trial court sentenced Petitioner to life imprisonment for the murder and to a term of years for the assault. Petitioner alleges that he is incarcerated in violation of his rights to due process and a fair trial because (1) the evidence adduced at trial was insufficient to support his convictions, (2) the prosecutor stated that Petitioner sold drugs and was arrested during a prior raid on the house in question, and (3) a witness was permitted to give hearsay testimony concerning Petitioner's and his friends' request to sell drugs at the house. Respondent Blaine Lafler answered the petition, asserting that Petitioner's first and third claims lack merit and his second claim is procedurally defaulted. The Court agrees. Therefore, the habeas petition will be **DENIED**.

# I

Petitioner was charged with first-degree (premeditated) murder, Mich. Comp. Laws § 750.316(1)(a), assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The charges arose from the fatal shooting of Aaron Allen and an assault on his brother Andre Allen at a house on Westbrook Street in Detroit. As explained by the Michigan Court of Appeals,

> On January 7, 2002, the victim and his brother went to visit friends at a residence in Detroit. Defendant arrived at the residence with eight other people, but they left after they were denied permission to sell drugs in the residence. Defendant later returned to the residence with an unidentified man who had accompanied him on his earlier visit.
>
> The victim, his brother, and several other people were watching television in the living room. Defendant stepped onto a flight of stairs, approaching the upper level, and the unidentified man remained downstairs in the living room. The victim's brother heard a gunshot, and he ran toward a side door with the victim. Although the victim's brother was certain that the unidentified man did not fire the gunshot, he saw the unidentified man subsequently draw a gun and fire four or five gunshots at them.
>
> Defendant and the unidentified man ran out the front door, firing gunshots at the side door of the residence. The victim's brother saw defendant get into the driver's side of his car while pointing a gun at the victim and himself. Tonya White, who was a friend of defendant and an occupant of the home, did not see defendant with a gun. Defendant and the unidentified man drove away together in defendant's vehicle. The victim was shot three times and died from a gunshot wound to his head. The victim's brother was injured when a gunshot grazed his leg.

*People v. French*, No. 250904, at 1-2 (Mich. Ct. App. Feb. 1, 2005) (unpublished opinion).

On July 22, 2003, a Wayne County Circuit Court jury acquitted Petitioner of the felony firearm count, but found him guilty, as charged, of first-degree murder and assault with intent to commit murder. The trial court sentenced Petitioner to mandatory life imprisonment for the murder conviction and to a concurrent term of 135 to 240 months in prison for the assault conviction. The

Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion, *see id.*, and

on September 28, 2005, the Michigan Supreme Court denied leave to appeal, *see People v. French*,

No. 128297 (Mich. Sup. Ct. Sept. 28, 2005).

Petitioner filed his habeas corpus petition and a motion to proceed *in forma pauperis* on

September 28, 2006.  His claims are:

I. Petitioner's convictions for first-degree murder and assault with intent to murder should be reversed and the charges dismissed, as the prosecution failed to present legally sufficient evidence that Petitioner was either the principal to or an aider and abettor to premeditated homicide and assault with intent to commit murder in violation of his Fourteenth Amendment to due process of law.

II. Petitioner was denied a fair trial where the trial prosecutor told the jury Petitioner sold drugs from the residence and was arrested at a prior raid of the house in opening argument and that was not supported on the record and defense counsel was ineffective in failing to object.

III. The trial court reversibly erred by admitting hearsay testimony as evidence of Petitioner's intent to sell drugs at the house where the shooting occurred.

II

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his

claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

III

A

Petitioner alleges that his convictions should be reversed and the charges dismissed because the prosecution failed to present legally sufficient evidence that he was either the principal or an aider and abettor to the crimes. According to Petitioner, the evidence established that an unknown black male fired the fatal gunshot. Petitioner maintains that he was merely present at the shooting and that there was no evidence he acted in concert with the shooter or that he had the requisite intent to be found guilty of murder or assault with intent to commit murder. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that there was sufficient evidence to convict Petitioner of both crimes.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements

-4-

of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.  In Michigan, the elements of assault with intent to commit murder are:  "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder."  *People v. Lugo*, 214 Mich. App. 699, 710; 542 N.W.2d 921, 927 (1995).

The elements of first-degree, premeditated murder are:  (1) the defendant killed the victim and (2) the killing was "willful, deliberate, and premeditated." Mich. Comp. Laws § 750.316(1)(a); *People v. Bowman*, 254 Mich. App. 142, 151; 656 N.W.2d 835, 841 (2002).

> [T]he prosecution must first prove that the defendant intentionally killed the victim. . . . [T]he intent to kill may be inferred from any facts in evidence.  Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill.

*People v. Unger*, 278 Mich. App. 210, 223; 749 N.W.2d 272, 286 (2008) (citations omitted).

"[O]ne convicted as an aider and abettor is punished the same as the principal of the offense."  *People v. Coomer*, 245 Mich. App. 206, 223; 627 N.W.2d 612, 622 (2001) (citing Mich. Comp. Laws § 767.39).  Aiding and abetting encompasses "all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which may support, encourage or incite the commission of a crime." *People v. Vicuna,* 141 Mich. App. 486, 495; 367 N.W.2d 887, 891 (1985), *disapproved of on other grounds by People v. Dalessandro*, 165 Mich. App. 569, 574; 419 N.W.2d 609, 612 (1988).  "The 'requisite intent' for conviction of a crime as an aider and abettor 'is that necessary to be convicted of the crime as a principal.'" *People v. Mass*, 464 Mich. 615, 628; 628 N.W.2d 540, 548 (2001) (quoting *People v. Kelly*, 423 Mich. 261, 278; 378 N.W.2d 365, 372

(1985)).  In a case of premeditated murder, the prosecutor has the burden of proving that the defendant possessed the specific intent to murder or knew that the principal possessed the specific intent.  *Vicuna*, 141 Mich. App. at 495-96; 367 N.W.2d at 891.

The testimony at trial established that Petitioner brought an unidentified man to the house on Westbrook Street.  He left the house with the man, but returned with him later in the evening.  Petitioner had a gun and he was the only person standing behind Andre Allen when Andre heard a gunshot coming from behind him.  Andre heard several subsequent gunshots, which he thought were fired by the unidentified man.  Petitioner and the unidentified man then left the house together as Andre and his brother ran from the living room to the side door of the house.  Once outside, Petitioner and the other man raised their guns and pointed them at the side door of the house.  Andre slammed the door shut and heard still more gunshots.  He saw Petitioner and the unidentified man run to Petitioner's car.  Petitioner went toward the driver's side of the car, and Andre thought that he saw gunfire coming from the passenger's side of the car.  The men then drove away.

Andre thought that the unidentified man was using a nine millimeter semi-automatic gun, which ejects casings, and that Petitioner was using a .38 caliber revolver, which does not eject shells.  Only nine millimeter casings were found at the scene.  Petitioner left the State on the day after the shooting, and he was found living in Dallas, Texas under a different name.  (Tr. July 21, 2003, at 16-18.)

A rational trier of fact could have concluded from Petitioner's close association with the unidentified man before, during, and after the shooting and from evidence of Petitioner's flight from

the State[1] that he aided and abetted the unidentified man.  A rational juror could have inferred from Petitioner's possession of a gun that Petitioner acted with intent to kill the victims.  Alternatively, a rational juror could have concluded that Petitioner assisted the unidentified man, knowing that the man had a gun and intended to kill the victims.

There was sufficient evidence to support the jury's verdict, particularly when all inferences are viewed in favor of the prosecution.  Consequently, the conclusion of the Michigan Court of Appeals -- that there was sufficient evidence to convict Petitioner of both crimes -- did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*.

B

The second habeas claim alleges that Petitioner was denied a fair trial because the prosecutor informed the jury during his opening statement that Petitioner sold drugs at the house where the shooting occurred and was arrested at the house about a week or two before the shooting.  (Tr. July 17, 2003, at 14.)[2]  Petitioner alleges that there was no testimony to support the comment that he sold drugs or had prior contact with the police.

Respondent contends that Petitioner's claim is procedurally defaulted because Petitioner did not object to the prosecutor's remarks during trial and because the Michigan Court of Appeals relied on the lack of an objection to deny relief.  A procedural default is "a critical failure to comply with state procedural law . . . ."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  "When a habeas petitioner fails

---

[1]  Evidence of flight can lead to an inference of guilt.  *People v. Biegajski,* 122 Mich. App. 215, 220; 332 N.W.2d 413, 415 (1982).

[2]  During closing arguments, the prosecutor made a similar comment that Petitioner had been selling drugs at the house prior to the date of the shooting and that he wanted to come back. (Tr. July 21, 2003, at 116-17.)

to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)). "[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

The procedural rule in question here is the State's contemporaneous-objection rule, which requires defendants to make timely and specific objections at trial in order to preserve a constitutional or nonconstitutional claim for appellate review. *See People v. Carines*, 460 Mich. 750, 764; 597 N.W.2d 130, 138 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Petitioner failed to make a contemporaneous objection to the prosecutor's opening statement. Consequently, the Michigan Court of Appeals reviewed Petitioner's prosecutorial-misconduct claim for "plain error affecting his substantial rights." The state court's review for "plain error" constituted enforcement of the procedural default. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Reliance on the rule was an adequate and independent basis for the state court's decision because the rule was firmly established before Petitioner's trial.

All three elements of procedural default have been satisfied. Therefore, habeas corpus review of Petitioner's claim is barred unless he "can demonstrate cause for the default and actual

-8-

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider [his] claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner alleges that his trial attorney was ineffective for failing to object to the prosecutor's opening remarks because the remark about his prior arrest for selling drugs was irrelevant and made him look like a bad person. Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986)). To prevail on a claim of ineffective assistance, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. A deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The prosecutor's disputed remark about Petitioner's arrest for selling drugs supported the prosecutor's theory that a "turf war" had been going on and that Petitioner wanted to resume selling drugs on Westbrook, but thought that the Allen brothers were selling drugs there. (Tr. July 17, 2003, at 14-17; July 21, 2003, at 117.) Even if the Court were to assume that defense counsel's failure to object to the prosecutor's remarks amounted to deficient performance, the deficient performance

could not have prejudiced the defense. Defense counsel himself remarked in his subsequent opening statement that the house on Westbrook was a drug house and that Petitioner went there to ask Farlona Thomas "if once again he [could] sell drugs" at the house. (Tr. July 17, 2003, at 18.)

The trial court, moreover, instructed the jurors that the attorneys' opening statements were designed to inform the jurors what the attorneys thought the evidence would show. (Tr. July 17, 2003, at 6.) The trial court also instructed the jurors at the beginning and at the close of the case that the lawyers' statements were not evidence, but were meant to help the jurors understand the parties' theories. The court charged the jurors to accept the lawyers' comments only if the comments were supported by the evidence or by the jurors' commonsense and general knowledge. (*Id*. at 11-12; Tr. July 22, 2003, at 6-7.) The jurors also were told not to let prejudice influence their decision. (Tr. July 22, 2003, at 4.)

Furthermore, there was substantial evidence that Petitioner was involved in the crimes against the Allen brothers. Petitioner brought the unidentified shooter to the residence, was armed and present when the shooter fired at the two victims, and helped the shooter escape. Petitioner has failed to show that the result of the trial would have been different had his attorney objected to evidence of Petitioner's prior arrest for a drug crime.

Petitioner has not satisfied both prongs of the *Strickland* test, that is, deficient performance and resulting prejudice. Therefore, defense counsel was not constitutionally ineffective, and he cannot be deemed "cause" for Petitioner's default.

The Court need not determine whether Petitioner was prejudiced as a result of the alleged constitutional error, because he has failed to establish "cause" to excuse his procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

The narrow exception for miscarriages of justice requires a habeas petitioner to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

Petitioner has not presented any new evidence to support a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Petitioner's claim about the prosecutor's opening remarks. Petitioner's prosecutorial-misconduct claim is procedurally defaulted.

## C

The third and final habeas claim alleges that the trial court reversibly erred by admitting Tonya White's testimony that, according to Farlona Thomas, Petitioner and his friends wanted to sell drugs at the house on Westbrook. Ms. White testified that, when Ms. Thomas explained this to her, she (Ms. White) responded by saying that the men could not sell drugs there. (Tr. July 23, 2003, at 120-23.) Petitioner claims that Ms. White's testimony was inadmissible and prejudicial hearsay, which supplied the motive for his involvement in the shooting. Petitioner also claims that the hearsay violated his constitutional right to confront Ms. Thomas, who did not testify at trial. The Michigan Court of Appeals adjudicated this claim on the merits and held that the statement was not

-11-

hearsay because it was an admission by a party opponent.

Whether the testimony was inadmissible hearsay under state law is inconsequential, because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). The constitutional issue is whether Petitioner's inability to cross-examine Ms. Thomas violated his right to confront the witnesses against him.

The Confrontation Clause of the Sixth Amendment "guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.' U.S. Const. amend. VI." *Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "Testimonial evidence" includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial" and statements made during police interrogations. *Id.*

Ms. Thomas's comment to Ms. White that Petitioner and his friends wanted to know whether they could sell drugs at the house on Westbrook was not prior testimony or a statement made during police interrogation. It was a statement made to a friend. Furthermore, the declarant, Ms. Thomas, could not have anticipated that her statement would be used against Petitioner in investigating and prosecuting the crime, because the statement was made before the shooting. Ms. Thomas's statement was nontestimonial; therefore, *Crawford* does not apply.

The Sixth Circuit continues to look to *Ohio v. Roberts*, 448 U.S. 56 (1980), and its progeny for guidance when nontestimonial hearsay is at issue. *See United States v. Johnson*, 440 F.3d 832,

843-44 (6th Cir.), *cert. denied*, 549 U.S. 829 (2006).   Pursuant to *Roberts*, an out-of-court

nontestimonial statement is admissible "against a criminal defendant if (1) the declarant is not

available for cross-examination at trial, and (2) there are adequate 'indicia of reliability,' either in

the form of (a) the satisfaction of a firmly rooted hearsay exception or (b) particularized guarantees

of trustworthiness."   *Id.* at 844.

Ms. Thomas was living in Alabama at the time of Petitioner's trial and was unavailable to

testify.   (Tr. July 21, 2003, at 9-10, 139.)   She made her disputed statement to Ms. White in

Petitioner's presence (Tr. July 17, 2003, as 123), and Petitioner apparently did not deny that he and

his friends wanted to sell drugs at the house on Westbrook.   The alleged hearsay therefore qualified

as an adoptive admission under Michigan Rule of Evidence 801(d)(2)(B).   Adoptive admissions are

a firmly-rooted exception to the hearsay rule.   *Berrisford v. Wood*, 826 F.2d 747, 751 (8th Cir.1987);

*United States v. Monks,* 774 F.2d 945, 952 (9th Cir. 1985).   Therefore, Ms. Thomas's statement to

Ms. White contained indicia of reliability and did not violate Petitioner's right to confront the

witnesses against him.

Even if Ms. White's testimony violated Petitioner's rights under the Confrontation Clause,

the prosecutor was not required to prove a motive for the crimes (Tr. July 22, 2003, at 9), and there

was substantial evidence that Petitioner's participated in the crimes.   Thus, Ms. White's testimony

that Ms. Thomas had said Petitioner and his friends wanted to sell drugs out of the house on

Westbrook could not have had a "substantial and injurious effect or influence in determining the

jury's verdict," and was harmless.   *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).   In fact, as

previously noted, defense counsel himself remarked in his opening statement that Petitioner went

to the house on Westbrook to ask Ms. Thomas whether he could sell drugs there.

IV

The state appellate court's adjudication of Petitioner's claims was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The state appellate court's decision also did not result in an unreasonable determination of the facts.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **GRANTED** with respect to all of Petitioner's claims because reasonable jurists could disagree with the Court's resolution of Petitioner's claims. *Banks v. Dretke*, 540 U.S. 668, 674 (2004).

It is further **ORDERED** that Petitioner's motion to proceed in forma pauperis [Dkt. 2] is **GRANTED**. Petitioner may proceed in forma pauperis in this Court and on appeal. Fed. R. App. P. 24(a)(3).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 24, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 24, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

-14-